## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:21-CV-00260-RSE

**PATRICIA LOU LADWIG**                                                        **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*[1]                      **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

The Commissioner of Social Security denied Patricia Lou Ladwig's ("Ladwig's") application for disability insurance benefits. Ladwig seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Both Ladwig (DN 19) and the Commissioner (DN 22) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 12).

### I. Background

Patricia Ladwig is 65 years old, lives with her husband in Hodgenville, Kentucky, and has a high school education. (Tr. 198, 206, 208). Ladwig is presently unemployed but has past relevant work experience as a distribution clerk in the food packing industry from March 1987 to April 2017. (Tr. 209). On March 27, 2018, Ladwig protectively filed an application for disability

---

1 Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

insurance benefits ("DIB") from the Social Security Administration under Title II of the Social Security Act, 42 U.S.C. § 1382c(a)(3)("Act"), alleging disability beginning on April 1, 2017. (Tr. 184). Ladwig claimed she could not perform work at substantial gainful levels due to diabetes, Graves' disease, and heart and back issues. (Tr. 207). Her application was denied initially on July 18, 2018 (Tr. 108) and upon reconsideration on October 30, 2018 (Tr. 115). Upon Ladwig's request, a video hearing was conducted before Administrative Law Judge Steven Collins ("ALJ Collins") on November 8, 2018. (Tr. 40–73). ALJ Collins presided from Louisville, Kentucky and Ladwig appeared from Elizabethtown, Kentucky. (*Id.*). ALJ Collins issued an unfavorable decision on November 19, 2019. (Tr. 13–34).

ALJ Collins applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Ladwig has not engaged in substantial gainful activity since April 1, 2017, the alleged onset date. (Tr. 18). Second, Ladwig has the severe impairments of degenerative changes to the lumbar spine; insulin dependent diabetes mellitus with diabetic peripheral neuropathy; coronary artery disease; hypertension; and obesity. (*Id.*). Third, none of Ladwig's impairments or combination of impairments meets or medically equals the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 22). ALJ Collins then determined Ladwig has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. 404.1567(b), with the following limitations:

> She can lift and/or carry up to 10 pounds frequently and 20 pounds occasionally; she can sit for about 6 hours in an 8-hour workday and stand or walk for about 6 hours in an 8-hour workday subject to being allowed the option to alternate between sitting and standing at intervals of every 30-45 minutes over the course of the workday and needing to take 1-2 minutes to change positions while staying on task; she can perform occasional balancing, stooping, crouching, kneeling, crawling and climbing ramps and stairs, but can never climb ladders, ropes, or scaffolds; and she must avoid concentrated exposure to vibration and extreme cold or heat.

(Tr. 22–23). Fourth, ALJ Collins found that Ladwig can perform her past relevant work as a customer order clerk, as it would not require performance of work-related activities precluded by her RFC. (Tr. 32). ALJ Collins concluded that Ladwig was not disabled, as defined in the Social Security Act, from April 1, 2017 through the date of his decision. (Tr. 33).

Ladwig sought review of ALJ Collins' decision. (Tr. 178–80). The Appeals Council declined review on February 19, 2021. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Ladwig sought judicial review from this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## III. Analysis

3

Ladwig raises two issues for review. First, she argues ALJ Collins erred in his consideration of Ladwig's need for a cane to ambulate. (DN 19, at PageID # 617). Ladwig cites to several medical opinions documenting her cane usage that she believes ALJ Collins erroneously deemed unpersuasive. (*Id.* at PageID # 618–19). Second, Ladwig contends ALJ Collins' RFC determination is not supported by substantial evidence because he failed to properly consider her visual impairments. (*Id.* at PageID # 621).

A.  ALJ Collins' Consideration of Ladwig's Need for a Cane

Ladwig argues ALJ Collins failed to account for her medically necessary cane when he found her capable of light work. (DN 19, at PageID # 617). Because Ladwig was never prescribed a cane, the Commissioner contends substantial evidence supports ALJ Collins' determination that Ladwig did not need one to ambulate. (DN 22, at PageID # 640).

SSR 96-9p outlines the evidence necessary to find that a cane is "medically required." (DN 18-1, at PageID # 701). For an ALJ to make such a finding, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p. Although Ladwig testified at the hearing that she needed and was prescribed a cane, no documentation of the prescription is contained in the record. ALJ Collins thus considered her testimony, Tr. 24 ("The claimant presented to the hearing with a cane that she reported has been prescribed for walking and balancing since May 2019."), but found it somewhat inconsistent with the medical evidence.

Ladwig relies on her treating physician, Dr. Brandon Houk, who opined that she requires a cane to walk. (DN 19, at PageID # 618–19). She claims ALJ Collins improperly deemed Dr. Houk's opinion unpersuasive despite significant evidence corroborating his findings. (*Id.*). The

new regulations for evaluating medical opinions are applicable here since Ladwig's claim was filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors" when determining the persuasiveness of an opinion. 20 C.F.R. 404.1520c(c)(1)–(5). But the ALJ need only explain how he considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2).

In evaluating Dr. Houk's opinion, ALJ Collins assessed its consistency and supportability and ultimately deemed it "not persuasive." (Tr. 32). Having thoroughly discussed Ladwig's documented cane use,[2] ALJ Collins determined Dr. Houk's "very extreme limitations" were not

---

[2] *See* Tr. 26 ("Beginning in October 2018, the pain management records begin observing the claimant to present to them using a cane for assistance with ambulation and include a new finding of decreased sensation in stocking-like distribution in both lower extremities."); ("[T]here was no finding of medical[] necessity for use of the claimant's cane or any other assistance devices and . . . the claimant's actual ongoing treatment has remained conservative with prescribed oral pain and neuropathic pain medications[.]"); ("Dr. Owens' objective findings are not consistent with the prior or subsequent findings of an antalgic or irregular gait or with claimant's observed use of a cane beginning in October 2018."); Tr. 27 ("Dr. Houk continued to record objective findings of lumbar spine tenderness to palpation . . . but does not appear to have observed or recommended a need for the claimant to use a cane or other assistive device at any time[.]"); Tr. 28 ("[Dr. Karam found] demonstrated ability to walk on heels and toes and perform tandem walking, which is indicative of overall adequate balance, strength, coordination and mobility without need for use of a cane or other assistive device."); ("Dr. Houk . . . does not appear to have observed or recommended a need for the claimant to use a cane or other assistive device at any time[.]").

well supported by or consistent with his own treatment records or the weight of the record evidence. (Tr. 32). This analysis comports with the regulations. Importantly, even if ALJ Collins had accepted Dr. Houk's finding that Ladwig required a cane, his opinion provided no guidance on the circumstances for which the cane is needed. SSR 96-9p has two distinct requirements that must be met before an ALJ can find a cane medically necessary, and Dr. Houk's opinion does not satisfy them. The Court finds no error in ALJ Collins' analysis here.

Ladwig also offers that ALJ Collins "played doctor" by attempting to interpret the raw data of Dr. Joseph Owens' opinion. (DN 19, at PageID # 620). In discussing Dr. Owens' findings, ALJ Collins provided as follows:

> The claimant was referred for evaluation by a neurologist, Dr. Owens, who noted the claimant to complain to him of having "near constant" numbness and tingling in both feet and legs . . . and having some right lower extremity swelling[.] . . . The pain was characterized as "moderate" [] in severity and burning in nature. Dr. Owens found decreased sensation to pinprick in a stocking distribution up to the level of the mid-shin for both lower extremities and a slight decrease in vibratory sensation in [] both great toes consistent with neuropathy[.] . . . While the claimant was noted to report having problems with loss of balance, falls, coordination and weakness, Dr. Owens' otherwise overall normal objective findings are not wholly consistent with that report. Dr. Owens' objective findings included normal symmetric muscle bulk, tone and strength (5/5) and otherwise intact sensation to light touch, pinprick, vibration and proprioception throughout all extremities, normal station, a normal narrow based gait with normal arm swing, and demonstrated intact balance and coordination to perform rapid alternating movements, including heel to shin movements with both lower extremities. Dr. Owens indicated no appreciation of any medical necessity for the use of a cane or any other assistive device. Dr. Owens recognized underlying diabetic, possibly small fiber neuropathy . . . [but] deferred further care for the claimant's neuropathy to [pain management specialists].

(Tr. 27). ALJ Collins made no attempt to interpret raw data. Rather, he compared Dr. Owens' overall determinations related to Ladwig's limitations with his underlying treatment notes and pointed out inconsistencies between the two. In addition to considering these internal inconsistencies, ALJ Collins noted "Dr. Owens' objective findings are not consistent with the prior

or subsequent findings of an antalgic or irregular gait or with claimant's observed use of a cane beginning in October 2018." (Tr. 26). While it is true that an ALJ may not substitute his own lay opinion for that of a doctor, *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600 (S.D. Ohio 2013), an ALJ is charged with determining the reliability of medical opinions by weighing consistency and supportability. ALJ Collins thoroughly did so here.

Ladwig admits that "no medical source has used the magic wording that the cane is 'medically necessary,'" insinuating that such a necessity can simply be inferred by other corroborating findings. (DN 19, at PageID # 619). The regulations do not allow for such inferences. Ladwig did not provide sufficient evidence to establish the need for a cane or other assistive device to aid in walking or standing or describing the circumstances for which it is needed. ALJ Collins did not err in finding that her cane use was not medically necessary.

## B.  ALJ Collins' Residual Functional Capacity Determination

Ladwig claims ALJ Collins' RFC determination is unsupported because he failed to consider her hearing testimony and the medical evidence demonstrating that her Graves' disease and diabetic retinopathy caused blurred vision. (DN 19, at PageID # 621). She maintains ALJ Collins should have accounted for her visual acuity in his RFC finding, as it prevents her from using a computer for an entire eight-hour workday. (*Id.*). Ladwig suggests ALJ Collins "cherry-picked" the evidence to support his RFC determination when the record overall supports a contrary finding. (*Id.* at PageID # 623).

In response, the Commissioner first notes Ladwig's argument is better characterized as a "step two complaint" because ALJ Collins did not find visual or eye impairments at that point in the sequential evaluation process. (DN 22, at PageID # 633–34). The Commissioner contends ALJ Collins' step two evaluation was supported by substantial evidence and should be affirmed. (*Id.* at PageID # 634). Alternatively, the Commissioner argues that Ladwig's argument fails as it relates

to ALJ Collins' RFC determination, which he submits is well-supported. (*Id.* at PageID # 634–40).

To the extent Ladwig argues ALJ Collins erred at step two in the sequential analysis, any failure to assign a designation to her visual impairments was not reversible error. The regulations do not require an administrative law judge to designate each impairment as "severe" or "non-severe." 20 C.F.R. § 404.1520(a)(ii). The severity standard at step two is merely a threshold inquiry that, if satisfied by the evidence presented by a claimant, allows the administrative law judge to proceed to the remaining steps of the evaluation process. 20 C.F.R. § 404.1523(c). ALJ Collins determined that Ladwig had severe impairments sufficient to proceed to step three. Therefore, "[t]he fact that some of [claimant]'s impairments were not deemed to be severe at step two is [] legally irrelevant." *Rhodes v. Comm'r of Soc. Sec.*, No. 3:17-CV-167-RGJ-CHL, 2019 WL 7643879, at *6 (W.D. Ky. Mar. 7, 2019) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).

Turning to ALJ Collins' RFC determination at step five, according to Ladwig, the record indicates she has limitations in near visual acuity and in reading and using a digital screen that prevent her from viewing a computer for more than six hours per day. (DN 19, at PageID # 623, 622). She suggests ALJ Collins ignored evidence supporting these limitations, instead focusing on her "normal long[-]distance vision." (*Id.* at PageID # 622). Although he did not directly address evidence of Ladwig's visual issues at step five of his analysis, he did not ignore it entirely. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that when sufficient factual findings are made elsewhere, an ALJ need not "spell out every fact a second time"). ALJ Collins thoroughly discussed Ladwig's alleged visual impairments, including her "history of Graves' ophthalmology," "multiple remote past surgeries that included the use of

implanted titanium hardware to alter her eye sockets and seat her eyes more deeply for better eyelid coverage," and "bilateral cataract lens replacement surgeries and current findings of diabetic retinopathy." (Tr. 19). Acknowledging the complications from her Graves' disease and diabetes, as well as her treatment and progress from 2017 to 2019, ALJ Collins found there was no evidence of "end organ eye disease due to any condition" and that "the medical evidence shows [] the claimant has maintained effective eye and visual functioning" throughout the alleged disability period. (Tr. 20).

In addition, the state agency consultants' opinions, which ALJ Collins relied on, accounted for Ladwig's diabetic retinopathy in the right eye, "Graves['] disease with exophthalmos with subsequent surgery x3, [and] bilateral exophthalmos," but noted "visual acuity 20/25 in each eye without correction," full visual fields, and the ability to close her eyes. (Tr. 83). Thus, they found that her visual limitations would not preclude Ladwig from all work. Although he ultimately added greater limitations than those recommended by the state agency consultants, ALJ Collins found their opinions "partially persuasive" because their findings were generally consistent with the other evidence of record. (Tr. 31). This analysis comports with the regulations.

ALJ Collins ultimately stated there were no assessments or opinions "of greater restrictions on activities or greater limitations of abilities from any treating or examining source" than appear in his RFC analysis. (Tr. 32). Although there may be evidence in the record to show some visual limitation, ALJ Collins appropriately considered such evidence. Moreover, an administrative law judge's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). ALJ Collins relied on objective medical evidence documenting Ladwig's denial of any loss of vision, the ability to close her eyes and intact muscle function, and no corrective lenses with

9

20/25 uncorrected visual acuity as of May 2018. (Tr. 19). While evidence may exist that would support a different finding, ALJ Collins' determination was supported by substantial evidence in the record and the undersigned finds no error.

ORDER

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Regina S. Edwards, Magistrate Judge

United States District Court

May 25, 2022

Copies:          Counsel of Record